Do you want to reserve any time, Mr. Tanaka? Two minutes, please. Two minutes, okay. I had the pleasure of wrapping up the morning in the week, so I will try not to tear you. The issue here is whether counsel's abandonment, retained counsel's abandonment of my client, Mr. Soroka, and failure to communicate that fact, the fact that she had quit working on his case, constitutes an extraordinary circumstance that warrants equitable tolling of the Federal Statute of Limitations, period. And, in fact, that's the issue that this Court remanded to be resolved on the prior appeal. Now, at the remand hearing, the evidence showed that, in fact, Petitioner had retained this woman through his father and paid her a goodly amount of money, and she had begun working on an appeal and a habeas case and, at some point, just quit working on it and, furthermore, did not tell anyone about that, despite the best efforts of both Petitioner and his family to keep apprised of the progress in this case. What happened was then the appeal was lost, the statute of limitations time began on the federal habeas writ, it began running, she's apparently working, for all concerned, to Petitioner and his family, the statute of limitations time runs out. It is now too late to file a federal petition. Nonetheless, she says nothing. Petitioner's father writes a series of letters after a series of unsuccessful phone calls saying, What's going on? We paid you to file this petition for us. We paid you to file this writ, and you haven't done anything. You're not talking to us. Please, please, please help us here. This is all after the statute of limitations has passed, mind you. She doesn't respond. She says, Well, if you don't respond by January, I have to file a complaint with the State Bar. They do. That gets a response. Counsel, under our law, what responsibility does Mr. Soroka himself have for seeing that his rights are vindicated? We realize that the attorney in this case clearly did some things or failed to do some things that raised a lot of eyebrows, but what is the burden that your client has in this case? Under the law, my client has a burden of diligence. And under the facts of this case, diligence, when you hire a lawyer and pay that lawyer not an insignificant sum to do that, means diligently contacting the lawyer to make sure the lawyer is doing what they've been paid to do. I think that's the burden that my client has. In this particular instance, does your client have an obligation or did he have an obligation to ask the lawyer to file a writ of habeas corpus? He did ask, yes. He did ask that? With respect to the State writ. Now, there was some, it was undisputed, that he never asked her to file a Federal writ. Right. She did know, however, that obviously any lawyer that does post-conviction work knows that the State writ is a prerequisite to filing the Federal writ in order to exhaust. She also knew that there was a one-year statute of limitations. Who did, your client or your... No, the lawyer. Right. And she never communicated that fact to my client. Okay, let's put aside for a moment possible attorney mal or misfeasance or malpractice or whatever may have been involved here. I'm trying to explore more what obligations your client had. Do we have any case law that indicates the, what constitutes sufficient diligence in this case on the part of a client? I submit, Your Honor, the only case law that would be Spitson and Spitson-Sykes-Valdez Act from the Second Circuit. In each case, when they talk about diligence, they talk about what the client did with reference to having the lawyer prepare this. And then after finding out that the lawyer didn't or wasn't going to prepare the pleading, then what the client did on his own to prepare it. Is the burden simply to contact the lawyer, turn it over to the lawyer, and if you do that, whatever you talked about to the lawyer, you've discharged your responsibility. Is that the law? No, I don't believe that. There's certainly no clear law. It's obviously a fact-intensive case, and whatever would be reasonable under the circumstances of this case. But with that premise, having turned it over to the lawyer, then your responsibility is to make sure to communicate with the lawyer. You don't just give it to the lawyer and come back three years later and say, hey, what happened? Okay, so let's take that. In this particular case, your client communicated through his father, right? That's correct. Okay, and what did the father do in terms of communication as the agent for your client? There's a whole series of things he did. He contacted her continuously throughout this period, and the record shows that. If you want, I can catalog. There weren't any lapses of time when he didn't communicate with him, didn't follow up? Nothing on the order of longer than a couple of months. I think the record and the chronology is cited in the brief, and it's also cited in district court's opinion. But pretty much every month or two, he made some phone call, some contact with her. Whether that was always answered or not, it's not. I mean, they weren't always answered, but he always made that contact, and when they ultimately weren't answered, he escalated the contact, and that's... Is it your position that your client... Let me state it another way. Is what your client's father did or did not do fully chargeable to your client in connection with our evaluation of whether there was appropriate diligence? I believe so, Your Honor. He had a power of attorney. He was acting on behalf of him. He retained the lawyer on behalf of his son, who was obviously hampered because he was in prison. Does it matter to us, should it matter to us, the reason the lawyer said she didn't take action? That's the father of the record, but do we take that into consideration? I don't believe so, because that reason was never communicated to the client. Let's assume it was not, since the record doesn't show that it was. But let's assume it's factual. The client would have known. His father would have known. And maybe that's the reason this case found itself in the posture that it is now. He had serious charges against him. He had been convicted of those serious charges, and he wanted to proceed with an appeal, and he gave his father a power of attorney. Father attained a counsel. Counsel was asked to proceed. She didn't proceed, so she says, because she saw there was nothing she could do. There was no basis for relief. And that would be just fine. Had she told him that in time for him to do something about it? Yes. So the record shows, so far as you're concerned, she didn't. That might be one reason the judge was questioning you about diligence. That's correct. What was his obligation? What was his father's obligation? And I'm throwing in, especially in a case where any effort would have been futile anyway. I don't know that it would have been, but that's what his lawyer said she thought. Once she gave up on it, he went and did the steps that she said she was doing and actually filed something, whether it would be ultimately futile or not. Mr. Tanaka, if you want to reserve your rebuttal time, why don't you hold that thought, and let's hear from the government, and then you can come back and comment further, if you wish, on what the government has to say. May it please the Court, Deputy Attorney General Michael Keller on behalf of the warden. The district court in this case properly found that Soroka's petition was untimely. Soroka wasn't entitled to any equitable tolling at all, and if he was entitled to some, it was only for a period that was insufficient to render the instant petition timely. What were those time periods where the government concedes there may have been some equitable tolling appropriate? Well, we certainly don't concede that there would be any. If there were, what would that time period be? That period is identified by the district court as being no earlier than April 20, 2000, because prior to that time, April 20? April 20, 2000, because prior to that point, the attorney, by all accounts, had been diligently handling this case, including filing three issues on direct appeal and conducting a rather thorough investigation towards a state habeas, which is what she had promised to do. And no later than? And it would have ended no later than January 10, 2001. That was the date by which Soroka himself admitted that he knew she was no longer going to be representing him and he was on his own. And the period thereafter would have been a sufficient time to do what? Well, even if equitable tolling was granted, according to this. Arguendo, yeah. Arguendo, if it were granted. For that period of time. For that period of time, as of January 10, 2001, the new lawyer had stepped in. What, if anything, could the lawyer have done at that point? Well, the question isn't, I don't think, what a lawyer could have done at that point. I mean, the question is, if he's entitled to equitable tolling for that period, would it render the instant petition timely? And the answer is, it wouldn't. So if, arguably, he was entitled to equitable tolling for that period, then a petition could have been filed at that point. Right. That was what I was getting at, is that the petition still could have been filed at that point, right? If he was entitled to tolling, yes. If he was entitled to tolling, right. Yes. But this Court's found that equitable tolling is a very rare circumstance. It's neither ordinary negligence or attorney error. Therefore, it's not granted in situations where attorneys miscalculate the limitations period, like Fry and Miranda. It's not granted where an attorney pursues clemency while the limitations period. My guess is he's saying here there was no knowledge. And because there was no knowledge, there should be equitable tolling. That's what I gather. There was no knowledge on his part? That counsel had stopped working the case. Well, which is an interesting point because counsel has argued a lot of things this morning that were disputed facts, and the district court didn't resolve some of these disputed facts. Ms. Podgorski testified that she didn't stop working and that she did communicate. Pages, excerpts of Record 123 through 125, she talks about, she details, first of all, what she did in terms of the investigation, hired an investigator, obtained a successful motion to get juror contact information so she could pursue possible juror misconduct issues, talked to the deputy DA regarding DNA evidence. She did quite a few things, and she says in summer to fall of 2000 she hadn't seen any viable issues despite her best efforts, and she said she communed this fact with Soroka's father, but he was displeased with that, and so she said she agreed to continue investigating. So what counsel is arguing today are disputed facts which the district court found no need to resolve, but there are certain facts which are beyond dispute. They were agreed at the evidentiary hearing, and those facts show that Soroka is not entitled to any evidentiary hearing, and I'd like to highlight some of those. First of all, this is a case where, like in Smithson, he was hired to do one thing, to file a Federal petition well in advance of the petition. He didn't do anything. Here we have an entirely different situation. She was hired to do the direct appeal. Well, she did that, and she raised three issues. She was hired, it's undisputed, to do a state habeas investigation. She did that pretty thoroughly. They detailed all the different things she did. But she was never hired to file a Federal petition. In fact, Mr. Soroka never even told her that he wanted to go to Federal court or had any plan to go to Federal court. I think given these facts, it can't be said that even if we were to assume as true those disputed allegations that she didn't communicate well during the late 2000 period when she was unable to find a viable issue, that that would rise beyond negligence to some sort of extraordinary factor where she has no reason to suspect that any delay in dealing with the state court issue is going to have any bearing on Federal court because there's never been any discussion that they're even going to Federal court. And so there's really – Spitson was a unique case, and there you had, first of all, not only did the attorney not do the one thing he was hired to do, and it was also rather clear that he was going to deprive this person of their right to ever file a Federal petition, which we don't have in this case because there was never any discussion about Federal court, but you also don't have the situation they had in Spitson where the attorney refused to return the legal file. In this case – No, she returned it as soon as she was asked. In writing, she did. That's exactly correct, Your Honor. Within, I think, five – And then she gave it to him. Yes. Within a few weeks – What should be the bottom line of the Court's decision? The bottom line should be that in this case, if you look at the facts that are undisputed, it doesn't rise to the level of any egregious misconduct. It doesn't rise. We don't see the facts here in Spitson. So even if you were to take as truth those facts which the district court found no need to resolve, it still wouldn't rise to the level of egregious misconduct. At most, it would be mere negligence. And I would point out also that even if there was egregious misconduct in this case that would somehow fit within that Spitson realm, then Soroka still wouldn't be entitled to equitable tolling because he would suffer from that causation problem that was discussed in the Bryant case where this court found in Bryant the petitioner was unaware of the limitations period, and he complained that the prison law library didn't have case law that it interpreted. And this court said, well, you didn't even know the limitations period. You weren't – there's a causation issue that's missing there. And Soroka suffers from that same thing. He wasn't planning to go to federal court. In fact, he admitted in the evidentiary hearing, quote, federal courts weren't on my mind at the time he had Ms. Podbrestky working for him. And he didn't know about the deadline for filing a federal writ until, quote, beginning of 2002. Well, that's well after she was finished with her representation of him. So essentially what you have is someone who wasn't thinking about going to federal court, never had any desire to go to federal court. Several years later, he makes the decision. And then he says, well, gee, if I'd wanted to, could I have? And then tries to go back and say, well, she prevented me. No, what prevented him was he never had an intent to do it in the first place. This isn't a case where he said, I need you to file a state petition. Oh, by the way, make sure in that state petition you raise federal claims because I want to go to federal court with him. Nothing like that was ever communicated. They've never said that there was anything like that. In fact, it's the exact opposite. So even if she – even if the facts were established, which they weren't, that she engaged in that conduct, and even if that conduct would rise to the level of egregious, he still would suffer from a causation problem. The last point I want to make is that even if there was egregious misconduct and even if he could somehow avoid that causation issue, he would only be entitled to equitable tolling for the period in which an extraordinary circumstances began, where the onset was, and then also looking at where it ended. And that was why the district court said, I don't even need to look at whether or not she returned phone calls or any of that kind of stuff because I know she was doing a lot up until April 20th, and certainly by January 10th he knew he was on his own. And so the period couldn't be longer than that period. And if he would grant tolling for anything beyond that, that would be a windfall. And I want to point out one thing that occurred in the reply brief. Sorokas' counsel says that taking Respondent's argument to its logical conclusion, had Ms. Pozbareski continued, quote-unquote, diligently working on Petitioner's state habeas petition past the limitations period for the federal petition and had filed it only after the time expired, Petitioner would not be entitled to any tolling. And he's right. I would say that, and that is exactly correct. That is the Malcolm case, where the attorney pursued clemency the limitations period expired, and they said, I'm sorry. That's not something that's going to be entitled to equitable tolling. And the last thing I would point out is the equitable tolling determinations aren't made by looking at whether there was some sort of benefit to Petitioner by what she did. Obviously, Mr. Fry received no benefit when he retained an attorney to file a federal petition, and that attorney missed the deadline. So the question isn't of what benefit. In short, Soroka was not entitled to any equitable tolling in this case, but even if he was entitled to some tolling, it was for a period that was insufficient to render the instant petition timely. Thank you. Thank you very much. You want to use your remaining time for rebuttal, or are you all set? I would like to take the last one. Okay. You've got 1 minute and 53 seconds. We're looking forward to your argument. It's a red herring to say that she was retained only to do a state habeas corpus. Anyone who does post-conviction representation in the state court knows that if they lose there, the client is 99 times out of 100 going to want to go to federal court. To not take that into consideration would be malpractice almost per se. The second point is that you cannot artificially say that he's entitled to X number of days that starts when she quit working on his case. The reason for that is because he got no benefit for any work she did because he didn't know that she stopped working, and she didn't give him any of that work. What about the comment, counsel says, that the father was told on, I think it was the 10th of January of 2001, that she was no longer working. Do you agree that at that point, if no earlier, that Mr. Soroka, through his father, was advised that she was no longer working on the case? I would agree if that were, in fact, resolved, but as counsel also pointed out, the district court judge felt no need to resolve any of those factual inconsistencies because he decided as a matter of law that even crediting all the facts in favor of petitioner, there wasn't enough time to make the petition timely. And that's the point that I vigorously dispute here. Thank you. Thank you very much. Thank you both. Counsel, the case of Soroka v. Garcia is submitted. Also, the case that was submitted on the briefs and records, United States v. Miss Nellie, is also submitted. And this court is adjourned.
judges: Farris, Smith, Sandoval